Judge Hitchcock
delivered the opinion of the court:
On March 12, 1831, the legislature of the state, by an act entitled “ an act to tax bank, insurance, and bridge companies,” 29 Ohio Stat. 802, levied a tax of five per cent, on the dividends of all such companies, and prescribed the mode in which the tax should be collected. The course pursued in this case is in conformity with that law; and the Commercial Bank of Cincinnati is within the provisions of the act as much as any other bank in the state, unless there is some principle of law which will operate to except it. To this law we see no objection ; for although it has been doubted by many, whether the legislature have the power •to tax private corporations, unless the power is reserved in the act of incorporation, we entertain the opinion that where there is no contract to the contrary, they do possess this power, and have an undoubted right to tax banking companies as to them may seem proper. And this opinion is in accordance with that of the Supreme Court of the United States, as expressed in the ease of Providence Bank of Rhode Island v. Billings and Putnam, 4 Pet. 515.
But the counsel for defendants contend that the Commercial Bank is, by its charter, exempted from the operation of this law. This bank was incorporated on February 11, 1829, 27 Ohio Stat. 72. In section 6 of the act of incorporation, it is provided, among •other things, “thatthe State of Ohio shall be entitled to receive four per cent, on all dividends made by said bank;” and that the demand and payment of this amount shall be made agreeably to the provisions of the act passed February 5, 1825, entitled “ an act to amend an act entitled an act to incorporate certain banks therein named, and to extend the charters of existing incorporated banks, passed February 23, 1816.” This act of February 5, 1825, although entitled “ an act to amend the act entitled an act to incorporate certain banks,” etc., was, it is believed, the first law of the state, levying in terms a tax upon banks — and, in truth, this act could hardly be said to do this. Previous to this time, a portion of stock had been, or ought by law to have been, set off to *128 the state in each of the banks as a bonus. By this act, however, *this bonus was relinquished to the banks, upon condition “ that each bank wishing to avail itself of the provisions of this act, shall pay to the State of Ohio ten per cent, upon all dividend® made by such bank, after the acceptance of the charter or extension thereof, under the act of which this is an amendment, and previous to the passage of this act, and four per cent, on all dividend® that shall hereafter be made by such bank, until otherwise provided by law.” Next follows a clause reserving to the legislature-the right of levying a tax either upon the capital stock or dividends of said bank, such as might be deemed reasonable and proper. The reservation of this power shows conclusively, that, in the opinions of those who enacted the law, without such reservation' the power could not be exercised.
This law was in fo.rce at the time of the incorporation of the Commercial Bank, and in requiring of this bank the payment of four per cent, on its dividends, it was, in that respect, placed upon the footing with the other banks then in operation. It was probably the intention, as is suggested by plaintiff’s counsel, to grant to it no greater privileges, nor subject it to any heavier burdens than were enjoyed by, or imposed upon those institutions. But the clause in the amendatory act, reserving to the state the power of taxation, was omitted in the act to incorporate the Commercial Bank. The only reference made in that act is for the purpose of prescribing the mode of enforcing the payment of this four per cent., and so far, and for this purpose, that act may be considered as constituting a part of the act of incorporation.
On January 31,1831, the act of incorporation was amended, the bank not having before that time come into operation, but still no change is made in that feature, which relates to the four per cent, or the power of taxation. 3 Chase’s Stat. '2065. On January 15, 1833, the capital stock of said bank was authorized to be increased to an amount not exceeding one million of dollars, “ which stock shall be subject to all the regulations, restrictions, and limitation® provided for in the act establishing the said bank.” 3 Chase’s Stat. 2077.
On March 12, 1831, the act to tax “ bank, insuranco, and bridge companies,” was passed, and the question to be determined, is, whether that act can be so construed as to extend to the Commercial Bank. As already remarked, this bank is within the general *129 provisions of this act. But it is ^contended by the defendants’ counsel, that, owing to the peculiar features of the act of incorporation, this general law for taxing banks, etc., can not ba brought to operate so as to collect the percentage prescribed from this particular bank.
We take it to be well settled that the charter of a private corporation is in the nature of a contract between the state and the corporation. Had there ever been any doubts upon this subject, those-doubts must have been removed by the decision of the Supreme-Court of the United States in the case of Woodward v. Dartmouth College, 4 Wheat. 518. Powers once granted can not be revoked; nor can any material change be made in such act of incorporation unless by the assent of the corporation themselves. Hence it is-customary in -the legislation of this state, to reserve the power of change or alteration, where it is desirable that such power should-remain in the state.
The mere fact of incorporation, however, does not exempt the-body incorporated from taxation. And, in our opinion, a corporation may be taxed in its business and property with as much-propriety, at least, as may an individual, unless there is something in the act by which it is constituted which exempts it from this-burden. So far as respects the property of the Commercial Bank,, there is no pretense that it is exempted from taxation. If it have lands, or houses, or personal property, which would be taxed in the-hands.of an individual, the same property may be taxed when belonging to the bank.
The clause in the charter which is supposed to exempt the Commercial Bank from the payment of.a tax upon its business similar' to that paid by other banks, is that which has been already quoted : “The State of Ohio shall be entitled to receive four per cent, on all dividends made by said bank.” Now, let ús for a moment examine this subject, considering the charter as a contract, and ap-. plying to it the ordinary rules of construing contracts.
The general assembly propose to confer upon such persons as-shall become stockholders in the bank certain powers and privileges. They propose to confer upon them all the privileges of banking. . But, as these privileges are valuable to the recipients, it-seems to be but right and proper that a suitable return should be-made for the benefit received. Therefore the legislature impose-upon the corporators, in their corporate capacity, the condition! *130 that they shall pay to the state four *per cent, on their dividends, and they reserve to themselves no right to change these ■terms. The only consideration required, the only consideration to be paid, is this four per cent. In other words, the general assembly say to such persons as may take the stock, you may enjoy the privileges of banking if you will consent to pay to the State ■of Ohio, for this privilege, four per cent, on your dividends as they •shall, from time to time, be made. The charter is accepted, the •stock is subscribed, and corporation pays, or is willing to pay, the •consideration stipulated, to wit, the four per cent. Here is a contract, specific in its terms, easy to be understood. Privileges are proffered for a certain and definite consideration to be paid; and •those privileges being accepted, the payment of the consideration •can be enforced. After a contract, similar to this, between individuals, where one undertook to convey any interest to another for a definite consideration, and the conveyance is made and accepted, it will not be pretended that anything more than the definite consideration can be recovered. But á contract between the .state and individuals is as obligatory as any other contract. Un-til a state is lost to all sense of justice and propriety, she will scrupulously abide by her contracts, more scrupulously than she will •exact.their fulfillment by the opposite contracting party.
As here was a contract between the state and the corporators of •the Commercial Bank, in their corporate capacity, that the latter .should enjoy certain privileges, in consideration of certain payments to be made, any law requiring the payment of a greater .amount varies this contract, and impairs its validity. Section 10 of the first article of the constitution of the United States .'provides, that no state shall pass any law impairing the obligation of •contracts; and section 16 of article 8 of the constitution of Ohio, that “ no ex post facto law, or law impairing the valdity of contracts, ¡shall ever be made.” A law, then, made in express terms, and for the avowed purpose of collecting a greater tax than four per cent, upon its dividends, from the Commercial Bank, would be in contravention of both these constitutions, and could not be enforced, unless we adopt the principle that an unconstitutional legislative ■enactment is a binding law of the land ; unless we adopt the principle that the law-making power is above the constitution under which it acts; unless, in fact, we adopt the principle, that, in this country, where we boast of constitutional *and limited gov *131 ernments, legislative supremacy is co-extensive with parliamentary omnipotence. If a law, such as is above referred to, could not be-enforced, certainly a law which purports to tax banks generally, without specifying this bank particularly, can not be extended by , construction to operate upon this bank, but must be so construed as to exclude it.
It may be thought that, inasmuch aá there is no clause in the' charter expressly limiting the power of taxation, therefore that power may be exercised to any discretionary extent. But such seems not to have been the understanding of the general assembly. In the act of February 6,1825, which required of the several banks which should comply with its requisitions, to pay four per cent, upon their dividends into the state treasury, it was doomed necessary to stipulate expressly, that the legislature should have power to levy an additional tax. This could not have been necessary, except upon the hypothesis, that, upon the relinquishment, by the' state, of the stock by her held in the banks, upon the consideration of the payment of the two and the four per cent, would be such a contract as would prevent her from subsequently levying any additional tax, unless the right so to do was expressly reserved* There is not, however, any such reservation in the act incorporating the Commercial Bank of Cincinnati.
On March 3, 1834, the Clinton Bank of Columbus was incorporated (32 Local Laws, 419). In section 6 of the act of incorporation, provision is made that five per cent, on its dividends shall be paid into the state treasury, and lest this should operate as a restriction upon further taxation, it is provided in section 16, that nothing contained in section 6 shall be so construed as to prevent the legislature from increasing the tax, provided that the said tax shall, at no time, exceed the tax upon.the other banks of the state? except the Commercial and Franklin Banks of Cincinnati. The Clinton Bank is referred to as one among many others, containing the same, or a similar provision. Why is the exception made as to the Commercial and Franklin Banks? But one answer can be given, and that is, that the general assembly supposed that the rate to be paid by these banks was fixed in their charters, and could not be changed by legislative enactment. The rate is fixed, although there is this difference between the two institutions, the ^Franklin Bank is required to pay five per cent upon its dividends, while the Commercial pays but four. The reason for *132 this difference probably is, that when the Franklin Bank was ■chartered, the other banks of the state were taxed five per cent. For it is not to be supposed that either of these institutions were peculiar favorites with the general assembly, or that it was intended to distinguish them from other similar institutions; although owing to some unknown circumstance, they have obtained an advantage which can not be taken from them by legislative authority, -or by any decision of the court.
Although there is not any express stipulation in the charter, restricting the power of the legislature to tax, there is a provision ■equivalent thereto. The price at which the privileges granted are to be enjoyed is fixed at four per cent, on the dividends; and this fixing of the price precludes the idea that any more onerous condition shall be imposed.
Another view may be taken of the case, which goes to strengthen the positions already assumed. This bank, by its charter, is bound to pay into the state treasury four per cent, on its dividends, as they are made. Suppose the legislature reduce the tax upon banks to two or three per cent., or suppose they should entirely repeal the law taxing banks, etc., still the Commercial Bank would be bound to pay the four per cent. Its charter would remain the same, and its liabilities would not be altered. If, then, a repeal ■of the law taxing banks would not operate to the advantage of this institution, certainly a general law increasing the tax ought not to operate to its injury.
Upon the whole, a majority of the court are of opinion that the Commercial Bank of Cincinnati is not within the operation of the law to tax banks, insurance, and bridge companies, and that no greater tax than four per cent, upon its dividends can be collected.
Judgment will be entered in favor of the plaintiff for nine hundred and five dollars and forty-four cents, without costs.
Judge Collett dissented.