THE STATE OF OHIO, EX REL. WILLIAM D. MORGAN, AUDITOR OF STATE, *v.* ELIAKIM H. MOORE, AUDITOR OF ATHENS COUNTY.

The Supreme Court of the United States, having decided that the 60th section of the act to incorporate the State Bank of Ohio, and other banking companies, passed Feb. 24, 1845, prescribes a rule of taxation for companies that organize under said act, which cannot, without the consent of the corporators, be changed by future legislation, this court will be governed by such decision, in cases arising under said section.

The tax law of 1852, in requiring of a bank, organized under said act of 1845, payment of a rate of taxes different from that provided for in the 60th section of the charter, is unconstitutional; and the county auditor may, in that particular, disregard it.

MOTION for a writ of peremptory mandamus.

The *Attorney General* for the relator.

BOWEN, J.

This is a motion for a peremptory mandamus, filed by the Attorney General, at the instance of the Auditor of State, to issue to the defendant, commanding him to proceed to ascertain the amount for which the Athens branch of the State Bank of Ohio should be entered upon the duplicate for taxation, and to enter the amount so ascertained upon the duplicate.

The Athens branch of the State Bank was organized, and went into operation, under a law of the general assembly, passed February 24, 1845, entitled "an act to incorporate the State Bank of Ohio, and other banking companies."

The 60th section of the act prescribes the rate of taxes which shall be paid by the bank, and then declares that such rate "shall be in lieu of all taxes to which such company, or the stockholders thereof, on account of stock owned therein, would otherwise be subject."

The "act for the assessment and taxation of all property in this State, and for levying taxes thereon, according to its true value in money," passed April 13, 1852, defines a different rule of taxation from that fixed in the charter. It provides for the collection from the bank of a larger amount of taxes than is required by said 60th section.

The president and cashier have refused to list and return the capital and property of the bank, according to the act of 1852. It is made the duty of the county auditor, by the provisions of the tax law, to enter upon his duplicate, for taxation, the capital stock of such bank, and to ascertain the average amount of notes and bills discounted or purchased, and all other moneys, effects, or dues of every description, belonging to such bank, loaned, invested, or otherwise used, with a view to profit; and to the capital, and the amount so ascertained, of notes, bills, etc., to add fifty per cent.; which sum, thus made up, is to be placed on the county duplicate, and assessed with taxes.

The county auditor declined to perform this requirement of the law, and the auditor of State moves for the allowance of this writ, to compel him to perform the duty thus imposed on him.

The question raised by this proceeding has been several times before the courts of this State for adjudication. It is this:

Can the legislature, under the constitution of 1802, after creating by enactment a private corporation, and delegating to it special privileges, and declaring a rule by which it shall be taxed, and, in terms or by implication, excluding the right to alter or change such rule, without the consent of the incorporation, by subsequent legislation, repeal or modify the charter thus granted?

*The State* v. *Commercial Bank of Cincinnati*, 7 Ohio Rep. 125, determined the question against such authority on the part of the legislature.

In *Piqua Branch Bank* v. *Knoop*, 1 Ohio St. Rep., the question was again under consideration before this court, and was ruled adversely to the claim of the corporation, and in favor of the power of the legislature to apply any principle of taxation to individuals or incorporated companies, which shall be *equal*, notwithstanding any former law on the subject, or any qualifying clause contained in a private charter, and overruled. *State* v. *Commercial Bank*, 7 Ohio Rep.

That case was removed into the Supreme Court of the United States, 16 How. 369, and the judgment of this court was, by that tribunal, reversed. It involved the construction of the same charter, and of a tax law similar to the one upon which this motion is predicated. The court say they were brought to the conclusion that in the acceptance of the charter, on its terms, and the payment of the capital stock, under an agreement to pay six per cent., semi-annually, on the dividends made, in *lieu* of all taxes, a contract was made binding on the State and on the bank, and that the tax law under which a higher tax was assessed on the bank than was stipulated in its charter, impairs the obligations of the contract, which is prohibited by the constitution of the United States, and consequently that the act, as regards the tax thus imposed, is void.

At the present term of this court, we have decided the case of *Matheny* v. *Golden*, in accordance with the principle laid down in 7 Ohio Rep., and in the above case, decided by the Supreme Court of the United States. Being entirely satisfied with the ruling in these cases, and that it should govern us in the disposal of this motion, we deem it unnecessary here to repeat the arguments or reasons which tend to convince us of its correctness. The views of the court are fully stated in *Matheny* v. *Golden*, above referred to.

*Motion denied.*

BARTLEY, C. J., dissenting.

I have given my views fully on the questions involved in this case, in my dissenting opinions in other cases decided at the present term. On the question of the appellate power of the Supreme Court of the United States over this court, and the authority of that court to reverse the judgment of this court, especially in regard to the interpretation of a State law, and the constitutional powers of the State legislature, I refer to the views expressed by me at full length, in the case of the *Piqua Bank* v. *Knoop*, 6 Ohio St. Rep. 344. And as to the grounds of my dissent on the other questions, I refer to my views expressed in the case of *Matheny* v. *Golden*, *supra*, and also the case of the *Toledo Bank* v. *Bond*, 1 Ohio St. Rep. 626, wherein the questions were decided in this court contrary to the decision in the case now before us.

BRINKERHOFF, J., also dissented for reasons stated in his dissent in the next following case.